IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Criminal Case No. 15-cr-414-WJM

UNITED STATES OF AMERICA,

 Plaintiff,

v.

1. **LAMONT NORRIS**,

 Defendant.

## ORDER AFFIRMING DETENTION ORDER

 This matter is before the Court on Defendant Lamont Norris's "Motion for Revocation of Magistrate Judge's Detention Order Issued After Defendant Appeared in Court on Summons" ("the Motion"). (ECF No. 49.)

 The Court reviewed the Motion and issued a text-only order denying the Motion. (ECF No. 62.) The Court indicated its intent to separately issue an order detailing its findings supporting its ruling prior to Norris's final revocation of supervised release hearing, which is now scheduled for February 6, 2019. (*Id.*; ECF No. 67.)

## I. BACKGROUND & PROCEDURAL HISTORY

 On June 23, 2016, Norris pled guilty to a federal criminal offense before this Court and was sentenced to 30 months incarceration and three years of supervised release. (ECF No. 39.) Norris's supervision began on May 8, 2018. (ECF No. 41 at 1.)

 On September 5, 2018, the Government petitioned this Court for a warrant alleging that Norris had violated certain terms and conditions of his supervised release.

(*Id.*)  The petition for warrant alleged Norris possessed crack cocaine, marijuana, psilocybin mushrooms, ecstasy, and morphine; associated with known felons on four occasions; and was charged with felony eluding and reckless driving in Arapahoe County, Colorado.  (ECF No. 41 at 4.)

The undersigned ordered issuance of a summons, and Norris was summoned to appear before U.S. Magistrate Judge Michael E. Hegarty on September 28, 2018 at 10:30 a.m. for an initial appearance on his supervised release violation.  (ECF Nos. 42 & 43.)  At this appearance, the Government sought to detain Norris.  Judge Hegarty held a detention hearing, after which he issued an Order of Detention.  (ECF No. 47.)

The following factual summary is based on the information in the record and evidence at the hearing before the Magistrate Judge.

At the hearing, U.S. Probation Officer Jordan Buescher provided additional information about the felony eluding charge.  In summary, "in approximately July 2018 . . . Defendant twice engaged in eluding police officers who were trying to make a stop, leading them on a high speed chase in a congested area of Denver at speeds up to 60 miles per hour.  Each time, for public safety reasons, the pursuit terminated." (*Id.*; *see* ECF No. 61 at 42–45.)

Officer Buescher also testified that he warned Norris not to associate with known felons.  (ECF No. 47 at 5.)  Despite those warnings, during an August meeting with Officer Buescher, Norris admitted being in contact with Leland "Little T" Heinz, a member of the Blood Street Gang who was under federal supervision at the time.  (ECF No. 61 at 34–35.)  In addition, the Aurora Police Department Gang Unit saw Norris outside a gym with Blood Street Gang member Joe Quann Alexander, who was under

federal supervision for prior felony convictions at the time Norris met with him. (ECF No. 47 at 4–5.) Norris contends that his contacts with Mr. Alexander and Mr. Hines were coincidental, and not intentional. (*Id.* at 6.)

From the record, the exact sequence of events leading to the discovery of the drugs is unclear, but it appears to arise out of the felony eluding charge and Norris's association with Alexander. After Norris was identified as eluding the police, a warrant issued for his arrest. Local law enforcement surveilled Norris, saw him with Alexander in a gym parking lot, and arrested him on the warrant. (ECF No. 61 at 30–32.) The police then drove Norris to his residence and obtained his consent to search the home. (*Id.* at 32.) During the search, they located drugs, along with digital scales and acetone (items associated with narcotics distribution) in the basement. (ECF No. 47 at 5.) Norris lived in a town home with his aunt, two teenage nieces, and a toddler, and was the sole occupant of the basement. (*Id.* at 4–5.)

At the hearing, Officer Buescher testified that the marijuana was co-mingled with the other drugs. Moreover, based on Norris's non-use of illegal drugs and the quantity, Officer Buescher believed the drugs were for distribution. (*Id.*) Norris admitted to knowledge of the marijuana, but denied knowing about the other substances. (*Id.*)

In support of release, Norris presented his record of gainful employment at S&R Mechanical, Inc., where he was a participant in the journeyman apprenticeship program to become a plumber. (ECF No. 61 at 17.) Norris appeared on a summons for the instant hearing, repeatedly appeared for hearings in state court proceedings (for which he posted $5,250 bond), and attended all meetings with Officer Buescher. (*Id.* at 18,

3

37, 41, 47.) He also cited family support as a positive factor. (*Id.* at 17.)

Judge Hegarty noted that Federal Rule of Criminal Procedure 32.1(a)(6), which permits a Magistrate Judge to detain a person charged with a supervised release violation, establishes a presumption in favor of detention rebuttable by a defendant showing, by clear and convincing evidence, that he is not likely to flee or pose a danger to any other person or the community. (ECF No. 47 at 1.) Judge Hegarty acknowledged the undersigned's decision to issue a summons instead of a warrant to secure Norris's appearance and Norris's voluntary appearance at the hearing. (*Id.* at 4.) However, Judge Hegarty nonetheless found that Norris's prior conduct "establishes a propensity to flee to avoid arrest and also a willingness to put the community in danger." (*Id.*) Thus, he concluded, by a preponderance of the evidence, that "no condition or combination of conditions of release will reasonably assure the appearance" and, by clear and convincing evidence, that "no condition or combination of conditions of release will reasonably assure the safety of the community." (*Id.* at 1, 6.) Norris was thus placed in custody pending his final revocation hearing.

Norris then filed the instant motion asking the undersigned to revoke the detention order issued by Judge Hegarty. The Court reviewed Judge Hegarty's findings, the full transcript of the hearing, and evidence presented at the hearing and in the record, and concluded that Norris did not meet his burden. (ECF No. 62.) The Court thus affirmed the detention order and denied Norris's motion. (*Id.*)

## II. DISCUSSION

Rule 32.1(a) and 18 U.S.C. § 3143(a)(1) govern the procedure and standards for

4

revoking or modifying supervised release when a person appears in response to a summons for violating supervised release. Under § 3143(a)(1), a magistrate judge may release such an individual only if the judge finds, by clear and convincing evidence, that the person is (a) not likely to flee or (b) pose a danger to another person or the community if released with or without conditions. *See also* 18 U.S.C. § 3142; *United States v. Johnson*, 652 F. App'x 619, 621–22 (10th Cir. 2016). The defendant has the burden to establish these factors. Rule 32.1(a).

A person ordered detained by a Magistrate Judge may move to revoke or amend a detention order to the court with original jurisdiction over the matter, here the district court. 18 U.S.C. § 3145(b). The district court reviews such motions *de novo*. *United States v. Cisneros*, 328 F.3d 610, 616 n.1 (10th Cir. 2003).

> *De novo* review, however, does not necessarily mean holding an evidentiary hearing. Although a district court may start from scratch and take evidence, it may also review the evidence that was before the magistrate judge and make its own independent determination as to whether the magistrate judge's findings and detention order are correct. This is a matter of discretion for the district court.

*United States v. Romero*, 2010 WL 11523871, at *2 (D. Colo. May 17, 2010) (internal quotation marks and citations omitted).

The Court finds that Norris has not meet his burden of rebutting the presumption of detention with clear and convincing evidence that he is not a flight risk and does not pose a danger to others or the community. The Court notes, as Judge Hegarty did, that the standard of proof and presumption of detention play determinative roles in the Court's decision today.

Certainly, Norris's repeated appearances before the federal and state courts,

5

and his reliability in attending meetings with his probation officer are some evidence that Norris is not a flight risk. However, these voluntary appearances are significantly undercut by Norris's willingness to flee when unexpectedly confronted by law enforcement officers. It is unclear how Norris's proposed alternative of a GPS ankle monitor, or any other potential conditions, would alter this apparent propensity to flee when unexpectedly confronted or reasonably assure his appearance. The Court thus finds that Norris has not met his burden to establish that he is not a flight risk.

Moreover, Norris's mixed record of conduct while on supervised release does not convincingly or clearly demonstrate that he does not pose a danger to the safety of others or the community. The Court commends Norris for his diligence in entering a plumber apprenticeship and creating avenues for legal, gainful employment. The Court also acknowledges Norris's family support and living environment with family.

However, Norris's extracurricular activities while on supervised release tell another story. In the basement where he lived (and in a house where three minors resided), police officers found cocaine, marijuana, morphine, ecstasy, and psilocybin mushrooms. Norris admits to knowing about the marijuana, weighing 229.1 grams, but denies possession of the other drugs. (ECF No. 61 at 17, 33.) However, Officer Buescher testified that the marijuana was found in the same location as the other drugs, and that the quantities and circumstances were consistent with distribution (rather than personal consumption). (*Id.* at 33.)

Norris also sped away from police in a vehicle on at least one occasion, and police were forced to stop their pursuit because of the dangerous high speeds. Police also observed Norris talking with Alexander—a childhood friend, known gang member,

6

and felon—outside a gym.  At a minimum, Norris's conduct appears to support a conclusion that, in addition to his legal employment, Norris began to return to old habits.  Drug possession indicative of distribution (particularly in a home with teenagers and a small child), high speed chases, and association with gang members are activities that endanger other individuals and community safety.  Despite the positive steps Norris has taken, he has not met his burden to demonstrate that he would not pose a danger to safety of others or the community if released.

Given the foregoing, the Court finds that Norris has failed to meet his burden to overcome the presumption of detention, and that no conditions or combination of conditions will reasonably assure the safety of any other person or the community.  The Court therefore denies Norris's Motion.

### III. CONCLUSION

For the reasons set forth above, the Court ORDERS as follow:

1. Defendant's Motion to Revoke the Detention Order (ECF No. 49) is DENIED;
2. Defendant's Final Supervised Release Violation Hearing REMAINS SET for **February 6, 2019 at 1:30 p.m. in Courtroom A702.**  Counsel shall take note of the different courtroom for this hearing.

Dated this 28th day of January, 2019.

BY THE COURT:

William J. Martinez
United States District Judge